IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KRISTINE RUTKOWSKI,　　　　　: Civil No. 1:25-CV-1005
　　　　　　　　　　　　　　　　:
　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　: (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,　　　　　　　:
Commissioner of Social Security,　:
　　　　　　　　　　　　　　　　:
　　Defendant.　　　　　　　　　:

MEMORANDUM OPINION

I.　　Introduction

Kristine Rutkowski filed an application under Title II of the Social

Security Act for disability and disability insurance benefits on May 31,

2022.[1]  Following a hearing before an Administrative Law Judge ("ALJ"),

the ALJ found that Rutkowski was not disabled from her alleged onset

date of May 31, 2022, through May 30, 2024, the date of the ALJ's

decision.[2]

Rutkowski now appeals this decision, arguing that the ALJ's

decision is not supported by substantial evidence.  After a review of the

---

[1] Tr. 17.
[2] *Id.*

record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.  Statement of Facts and of the Case[4]

Rutkowski filed for disability and disability insurance benefits alleging disability due to major depressive disorder, anxiety disorder, thymus cancer stage 1, chronic intractable migraines, type 2 diabetes, irritable bowel syndrome ("IBS"), polycystic ovarian syndrome ("PCOS"), sleep apnea, restless legs syndrome, and chronic pain in her neck and back.[5]  Rutkowski was 36 years old at the time of her alleged onset of disability, had at least a high school education, and had past relevant work as a financial analyst and an animal caretaker.[6]

---

[3] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

[4] Because Rutkowski's appeal focuses primarily on the hearing testimony and her treating doctor's notes regarding her physical impairments, we forego our usual summary of the entirety of plaintiff's medical records.

[5] Tr. 87.

[6] Tr. 30.

On January 24, 2024, the ALJ held a hearing regarding Rutkowski's disability application.[7]  Rutkowski, her father-in-law, and a Vocational Expert ("VE") testified at this hearing.[8]  Rutkowski explained that she had earned a bachelor's degree in business management with a specialization in accounting, and had worked at Geisinger System Services as a financial analyst.[9]  After leaving that position she began to work for herself as the owner of a professional pet sitting business, where she visited pet owner's homes to care for their pets and also managed some of the business's administrative work.[10]  She told the ALJ that while she remained the owner of this business, her health conditions now only permitted her to work there four to five days a month.[11]  She then detailed those conditions, first stating that her fibromyalgia caused flu-like symptoms and brain fog, which affected her abilities to focus, concentrate, read, and interact with others.[12]  She explained that in

---

[7] Tr. 40-78.
[8] *Id.*
[9] Tr. 45-46.
[10] Tr. 47.
[11] Tr. 48.
[12] Tr. 56.

addition to migraines she suffered from occipital neuralgia, and so had a headache "probably five days a week [,]" which could last "up to three days [,]" and that her only recourse was to lay down and avoid noise and light until the headache passed.[13]  She also testified that her IBS caused her to use the bathroom a minimum of five, and as many as ten, times a day for 15 minutes or more per visit, that those visits happen "randomly," and that medication had not helped much.[14]  She stated that her back and neck pain made her unable to sit or stand for more than 20 minutes, or walk for more than ten minutes.[15]  She further reported that pain and anxiety limited her to five hours of oft-interrupted sleep a night, and so she napped daily for two to three hours.[16]

William Rutkowski, the claimant's father-in-law, also testified.  He recounted how the plaintiff almost always appeared to be in pain and frequently had to get up to walk around or use the bathroom.[17]  He explained that when she has a migraine she would need to close her eyes

---

[13] Tr. 49, 55-7.
[14] Tr. 50, 57.
[15] Tr. 50-51.
[16] Tr. 53, 60.
[17] Tr. 66.

4

for prolonged periods to combat the pain, and also that she cannot drive.[18]

He characterized her "brain fog" as a "state of paranoid confusion [.]"[19]

Finally, the VE testified. She characterized Rutkowski's prior work by analogizing similar jobs listed in the Dictionary of Occupational Titles ("DOT").[20] She then answered hypothetical questions from the ALJ and Rutkowski's attorney about what jobs a person with impairments similar to Rutkowski's could perform.[21]

Following this hearing, on May 30, 2024, the ALJ issued a decision denying Rutkowski's application for disability benefits.[22] The ALJ first concluded that Rutkowski had not engaged in substantial gainful activity since her alleged onset date of May 31, 2022.[23] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Rutkowski suffered from the severe impairments of major depressive disorder, anxiety disorder, chronic intractable migraine headaches, lumbar

---

[18] Tr. 67.
[19] Tr. 68.
[20] Tr. 72.
[21] Tr. 72-76.
[22] Tr. 17-32.
[23] Tr. 20.

radiculopathy, and degenerative disc disease of the cervical spine, as well as the non-severe impairments of IBS, PCOS, sleep apnea, restless leg syndrome, diabetes, cancer, and obesity and found these to be nonsevere impairments.[24]   At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[25]

Between Steps 3 and 4, the ALJ then concluded that Rutkowski:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should avoid unprotected heights and industrial machinery. She should avoid climbing ladders and scaffolds, but she may occasionally climb ramps and stairs. The claimant can tolerate occasional exposure to temperature extremes, wetness, and vibration. She should avoid occupations that would expose her to noise above level 3, described as a moderate noise intensity level. The claimant is able to understand, retain and carry out detailed, but not complex, instructions with occasional workplace changes. She can perform occasional decision-making with respect to work-related activities. The claimant should avoid interaction with the public except for incidental contact. The claimant is capable of frequent interaction with co-workers and supervisors.[26]

---

[24] *Id.*
[25] Tr. 20-24.
[26] Tr. 24.

In reaching this RFC determination, the ALJ considered the objective medical record, the medical opinion evidence, and Rutkowski's reported symptoms.  With respect to the medical opinion evidence, the ALJ first considered the opinions of State agency medical consultants Dr. Chung and Dr. Manganiello.[27]  Dr. Chung found that Rutkowski could perform light exertion work, but could only occasionally climb ladders, ropes, or scaffolds and only frequently balance, stoop, kneel, crouch, or crawl.[28]  The ALJ found this opinion minimally persuasive.[29]  Specifically, the ALJ reasoned that Dr. Chung's opinion was not fully consistent with the record as a whole, which supported additional postural and environmental limitations than Dr. Chung opined necessary.[30]

Dr. Manganiello's opinion was similar to Dr. Chung's except that Dr. Manganiello opined Rutkowski could only occasionally perform the postural tasks discussed above and that she needed to avoid concentrated exposure to extreme heat, wetness, noise, vibration and hazards.[31]  The

---

[27] Tr. 27-28.
[28] Tr. 27-28.
[29] Tr. 28.
[30] *Id.*
[31] Tr. 28.

7

ALJ found that opinion to be generally persuasive as it was supported by the doctor's own explanation.[32] The ALJ also noted that there was no support for Dr. Manganiello's conclusion that the postural activities needed to be limited to "occasional," and also that the degree of opined environmental restrictions were not supported by the record, which in the ALJ's view supported a limitation to "occasional" exposure to those conditions.[33]

With respect to Rutkowski's symptoms, the ALJ found that Rutkowski's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[34]  The ALJ ultimately found Rutkowski's testimony to be inconsistent with the objective clinical findings.[35]  The ALJ recounted the objective evidence during the alleged disability period, including, *inter alia*, that MRIs found only mild degenerative disc disease and no intracranial abnormalities, and that the record showed a lack of acute

---

[32] *Id.*

[33] *Id.*

[34] Tr. 25-26.

[35] Tr. 26.

distress at examinations.[36]    Ultimately, the ALJ concluded that Rutkowski was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Rutkowski was unable to perform any past relevant work but found at Step 5 that she could perform the occupations of routing clerk, mail clerk, or ticket marker.[37]  Accordingly, the ALJ found that Rutkowski had not met the stringent standard prescribed for disability benefits and denied her claim.[38]

This appeal followed.  On appeal, Rutkowski argues that the ALJ's decision is not supported by substantial evidence because the ALJ erroneously failed to identify certain impairments as severe, treated medical opinion evidence and testimony improperly, and failed to comply with certain Social Security Rulings ("SSR").[39]  This case is fully briefed and is therefore ripe for resolution.[40]  For the reasons set forth below, we will affirm the decision of the Commissioner.

---

[36] Tr. 26-27.
[37] Tr. 31.
[38] *Id.*
[39] Doc. 9 at 7.
[40] Docs. 9, 13, 14.

## III.   Discussion
### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[41]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[42]  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[43]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[44]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent

---

[41] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[42] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[43] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[44] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[45]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[46]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[47]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[48]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[49]

---

[45] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[46] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[47] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[48] *Id.*

[49] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[50] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[51] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[52] Ultimately, the ALJ's decision must be

---

a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[50] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[51] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[52] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

accompanied by "a clear and satisfactory explication of the basis on which it rests."[53]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[54] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[55] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed

---

[53] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[54] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

[55] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

to the insurance program, and became disabled prior to the date on which he or she was last insured.[56]

In making this determination, the ALJ follows a five-step evaluation.[57] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[58]

Between Steps 3 and 4, the ALJ must also determine the claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[59] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments

---

[56] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[57] 20 C.F.R. §§404.1520(a), 416.920(a).
[58] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[59] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

14

identified by the ALJ at Step 2 of his or her analysis.[60]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[61]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[62]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[63]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have

---

[60] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[61] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).
[62] *Mason*, 994 F.2d at 1064.
[63] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[64]  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[65]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.  Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[66] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or

---

[64] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[65] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).
[66] *Biller*, 962 F. Supp. 2d at 778–79.

when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[67]   Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[68]

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[69]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[70]  Supportability means "[t]he more relevant the objective medical evidence and supporting

---

[67] *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[68] *Burns,* 312 F.3d 113.

[69] 20 C.F.R. § 404.1520c(c).

[70] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi,* 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[71]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[72]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[73]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[74]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[75]  On the other hand, in cases where no medical opinion credibly supports the claimant's

---

[71] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[72] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[73] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[74] *Mason*, 994 F.2d at 1066.
[75] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[76]

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[77] Our review of those determinations is deferential.[78] However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible."[79] An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[80] As the Third Circuit has noted, while "statements of the individual concerning

---

[76] *Cummings*, 129 F. Supp. 3d at 214–15.

[77] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).

[78] *Id.*

[79] *Zirnsak*, 777 F.3d at 612 (citations omitted).

[80] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

his or her symptoms must be carefully considered, the ALJ is not required to credit them."[81]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[82]  Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[83]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[84]  During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity,

---

[81] *Chandler,* 667 F.3d at 363 (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").
[82] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.
[83] SSR 16-3p.
[84] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.

20

persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[85]  This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[86]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[87]  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[88] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than

---

[85] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[86] *Id.*
[87] SSR 16-3p.
[88] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

medications; and other factors regarding the claimant's functional limitations.[89]

### F. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[90] Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Rutkowski first argues that the ALJ erred by not finding certain impairments severe. At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[91] An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," or if it is "something beyond 'a slight abnormality which would have no more than

---

[89] *Id.*

[90] *Biestek*, 139 S. Ct. at 1154.

[91] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

a minimal effect on an individual's ability to work.'"[92]  This Step 2 inquiry is a de minimis screening device used to cast out meritless claims.[93]  The claimant bears the burden to show that an impairment should be considered severe.[94]

Here, the ALJ explicitly considered Rutkowski's IBS, PCOS, sleep apnea, restless leg syndrome, diabetes, cancer, and obesity and found these to be nonsevere impairments.[95] Even assuming *arguendo* that these classifications were error, our caselaw is clear that such error is harmless so long as the evaluation moves to Step 3, as it did here.[96]  As for the RFC, we conclude there was no error regarding these impairments as the ALJ "considered all of the claimant's medically determinable impairments, *including those that are not severe*, when assessing the claimant's [RFC]."[97]  Further, it is the plaintiff's responsibility to show

---

[92] 20 C.F.R. 404.1520(c); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).

[93] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

[94] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

[95] Tr. 20.

[96] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).

[97] Tr. 20 (emphasis added).

that, if the ALJ made an error in his evaluation of these impairments, that error affected the outcome.[98]  Rutkowski offers no explanation as to how labeling these impairments as severe would have affected the outcome.[99]  Accordingly, this argument is unavailing.

Next, Rutkowski argues that the ALJ did not properly address the probative or persuasive value of certain medical opinions.  She argues that the ALJ failed to give "controlling weight" to the opinion of Dr. Williams, her treating physician.[100]  But the authority cited in support of her argument, SSR 96-2p, was rescinded in 1997, and its replacement eliminated the weighted credibility component of an ALJ's decision.[101]  Further, there is no medical opinion from Dr. Williams in the record.  A "medical opinion" is a term of art in Social Security law, specifically referring to "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more

---

[98] *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

[99] We note that all Rutkowski's arguments suffer from this shortcoming.

[100] Doc. 9 at 9-10.

[101] *See* 20 C.F.R. § 404.1520c.

impairment-related limitations or restriction [.]"[102]  Dr. Williams made

no such statements in the record.  Rutkowski makes only one reference

to the medical record arguing otherwise, citing to a report from Dr.

Williams.[103]   In that report, Dr. Williams found Rutkowski had

tenderness to palpitation in the posterior cervical facet joints, pain in

that same region when hyperextending, and multilevel degenerative disc

disease as revealed by MRI.[104]  That is not a medical opinion under the

definition given above.  We discern no error here.

Rutkowski also argues that the ALJ "never properly explained" why

he found certain medical opinions to be persuasive or partially

persuasive.  But the law is clear that the ALJ is "not required to

articulate how [he] considered each medical opinion . . . from one medical

source individually."[105] Rather, what is required is to "articulate how [he]

considered the medical opinions . . . from that medical source together in

a single analysis."[106] We conclude that the discussion of medical opinions

---

[102] 20 C.F.R. § 404.1513.
[103] Doc. 9 at 9.
[104] Tr. 1254.
[105] 20 C.F.R. § 404.1520c(b)(1).
[106] *Id.*

in the ALJ's decision[107] conforms to this standard.  We find no error in the ALJ's treatment of medical opinion evidence.

Rutkowski's third argument is that the ALJ improperly discounted her testimony and her father-in-law's testimony.  Here, Rutkowski again relies on authority that has been rescinded—SSR 96-7p—which she apparently cites for the proposition that the ALJ needed to identify specific reasons for discounting her self-reported symptom evidence.[108] The current ruling, SSR 16-3p, explains that an ALJ must first reference objective clinical signs or laboratory findings in order to properly find a medically determinable impairment has been established.[109]  Only after such evidence establishes an impairment will the ALJ consider the intensity and persistence of the symptoms and the commiserate effect on a claimant's ability to work.[110]  That process "obviously requires the ALJ to determine the extent to which a claimant is accurately stating" their symptoms and the effect thereof.[111]

---

[107] Tr. 27-29.
[108] *See* SSR 16-3p, 2017 WL 5180304.
[109] *Id.* at *3.
[110] *Id.*
[111] *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

26

Here, the ALJ expounded for several pages on the evidence that led him to conclude that Rutkowski's statements regarding "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[112]  He went on to explain that her statements about her symptoms were "inconsistent because the objective evidence does not support the severity of [Rutkowski's] alleged symptoms related to her physical impairments.  The nature and scope of [Rutkowski's] treatment history is also not supportive of a finding that she would be precluded from sustaining a range of light exertion."[113]  We find no error with the ALJ's treatment of the plaintiff's symptoms, since the decision evinces proper treatment of self-reported symptom evidence under SSR 16-3p.

Rutkowski similarly argues that her father-in-law's testimony was improperly found unpersuasive.  But the law is clear that ALJs are "not required to articulate how [they] considered evidence from non-medical

---

[112] Tr. 25-26.
[113] Tr. 26.

sources."[114]  The ALJ discussed this evidence in his decision, dedicating a long paragraph to explaining why he found that testimony only partially persuasive.[115]  That was more than the law requires, and the treatment of this evidence does not require remand.

Rutkowski's final argument is that the ALJ's treatment of the VE's testimony ran afoul of SSR 24-3p.  This argument is unavailing.  The plain text of SSR 24-3p states that the Social Security Administration "will apply this notice on January 6, 2025"[116] and that "Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."[117]  Since the decision denying Rutkowski's benefits issued on May 30, 2024,[118] SSR 24-3p clearly does not apply here.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to

---

[114] 20 C.F.R. § 404.1520c(d).

[115] Tr. 29.

[116] SSR 24-3p, 89 Fed. Reg. 97158-01, 2024 WL 4988840.

[117] *Id.* at n. 1.

[118] Tr. 14.

appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 2nd day of April 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge
